### UNITED STATES DISTRICT COURT
### FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

ROSA MARIA PAZCABALLERO,

               Plaintiff,

           v.

KILOLO KIJAKAZI, Acting Commissioner
of Social Security,[1]

               Defendant.

No. 20 C 06490

Judge Thomas M. Durkin

### MEMORANDUM OPINION AND ORDER

Rosa Maria PazCaballero brought this action under 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of Social Security denying her claim for disability insurance benefits. The parties filed cross-motions for summary judgment. Dkt. 12; Dkt. 17. For the following reasons, PazCaballero's motion is denied and the Commissioner's motion is granted.

### Background

#### I.    Procedural History

PazCaballero filed a Title II application for a period of disability and disability insurance benefits on October 10, 2017, alleging disability beginning June 16, 2016. R. 17.[2] The claim was denied on January 2, 2018, and again upon administrative

---

[1] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021, and is automatically substituted as the defendant under Fed. R. Civ. P. 25(d).

[2] References to the Administrative Record (Dkt. 11) are cited as "R. #."

reconsideration on June 20, 2018. R. 17. PazCaballero then timely filed a written request for a hearing before an Administrative Law Judge. R. 17. She appeared and testified at the hearing on August 13, 2019. R. 17. The hearing was continued to allow for collection of outstanding medical records and to provide PazCaballero an opportunity to obtain legal representation for the supplemental hearing. R. 17. PazCaballero appeared and testified at the supplemental hearing on December 10, 2019. R. 17.

The ALJ issued a decision denying benefits on February 26, 2020. R. 17-33. PazCaballero sought review in the Appeals Council, which denied her request on September 3, 2020. R. 1. PazCaballero timely filed for review in this Court on November 1, 2020.

## II.  Factual Background

### A.  Medical Record Evidence

As noted by the ALJ, PazCaballero has a history of medical issues centered on her right ankle, originating from a May 2008 fracture that required surgery with hardware placement. R. 20, 26. She thereafter underwent multiple procedures on the ankle to remove the retained hardware. R. 123-24. She was prescribed physical therapy and mobility assistance, beginning with a wheelchair and progressing to use of a cam walker and eventually a cane. R. 124. On May 11, 2010, PazCaballero was awarded a closed period of Social Security disability benefits for the period of May 30, 2008 to August 4, 2009. R. 123.

2

In April 2016, PazCaballero presented with pain, swelling, and instability in her right ankle and leg. R. 597. She underwent an MRI that revealed postoperative changes and several ailments, including osteoarthritis. R. 595-96. PazCaballero underwent surgery on June 16, 2016 (the alleged disability onset date) to repair structural damage in the ankle. R. 601. She followed with physical therapy for several months, and post-operative notes indicate gradual improvement in her condition and mobility. R. 637. For example, by October 2016, she was noted as walking with a cane support and had improved strength through her ankle and foot with mild edema. R. 637. Treatment notes indicated that she needed to extend her time off work until January 2017 because her employer would not allow use of a knee roller at work. R. 637.

PazCaballero was discharged from physical therapy in March 2017, with her treating physician Dr. Lim noting that she had reached the maximum benefit from therapy and demonstrated independence with a home exercise plan. R. 1237-38. The discharge summary noted improvements in range of motion, strength, gait, and weight bearing but noted continuing difficulties with ascending/descending stairs, standing more than 30 minutes, and walking on uneven surfaces. R. 1237. Her therapy notes also indicate some pain and discomfort in her left ankle. R. 1240, 2066.

PazCaballero has reported symptoms of fibromyalgia, including stiffness, numbness, and pain. R. 2165, 2179, 2206. She is under the care of a rheumatologist, R. 1072, and treats these symptoms with medical marijuana, R. 2165, 2179. She also has a diagnosis of complex regional pain syndrome. R. 1072, 2193. A July 2019 MRI

of her cervical spine showed mild-moderate arthritic changes at multiple levels. R. 1069. PazCaballero's BMI during the alleged disability period consistently placed her in the obese range. R. 1071, 2036, 2172. She underwent a gastric sleeve procedure prior to the alleged disability onset date which resulted in substantial weight loss, but continued to experience pain in her right ankle thereafter. R. 1071-72.

PazCaballero underwent a psychological consultative examination in December 2017 in which she reported feeling depressed and experiencing mood swings that began two years prior. R. 1037-40. The examining physician noted that she appeared to be in some emotional distress but saw no indication of psychosis or suicidal ideation. R. 1038. She was noted to be "fairly independent and self-sufficient with all activities of daily living." R. 1038. PazCaballero was diagnosed with major depressive disorder. R. 40.

PazCaballero then underwent a mental health consultation in January 2018, in which she was diagnosed with post-traumatic stress disorder and moderate major depressive disorder. R. 977-82. Her symptoms included sadness, crying easily, irritability, anhedonia, poor concentration and sleep, and occasional auditory hallucinations. R. 977. By May 2018, she reported improvements in her depression and anxiety with treatment. R. 988. She underwent a second mental health consultation at the end of May and was diagnosed with bipolar disorder, type II, and anxiety. R. 1061-65.

PazCaballero treated her mental health symptoms with counseling from March 2018 to December 2019, during which she reported symptoms including

depression and anxiety. R. 2072-157. She was intermittently noted to have poor concentration and racing thoughts. R. 2129, 2146. She continued to partake in activities with her children and was receiving social support from her husband and friends. R. 2089, 2098, 2129, 2131. PazCaballero reported increasing forgetfulness during a July 2019 neurology visit, but her mental status examination was normal, and the neurologist suggested her memory loss was likely due to stress and impaired sleep.

B. <u>Medical Opinion Evidence</u>

PazCaballero's treating therapist, Christine Burback, completed two Mental Residual Functional Capacity Statements in November 2019. Burback opined that PazCaballero would continue to experience mental symptoms that would cause her to be "off-task" at least 15 to 30% of the workday and would likely be absent more than 6 days per month. R. 2056-58.

Dr. Myrna Patricio, one of PazCaballero's long-term treating primary care physicians, opined that her pain and stress would frequently be severe enough to interfere with her ability to perform simple work tasks. R. 2066. Her assessment suggested PazCaballero would need to lie down during the day as a result of pain and could not sit, stand, or walk more than 30 minutes at a time. R. 2067-68. She opined that PazCaballero would be unable to obtain and retain employment in a competitive work environment because of her impairments. R. 2069, 2071.

C. <u>Hearing Testimony</u>

At the initial and continued hearings before the ALJ, PazCaballero first testified about her employment history. R. 47-54. She testified that she was presently unable to work full time because of her physical and mental disabilities, citing depression and PTSD. R. 54. Her last regular employment came in 2017 when she worked for Professor Diane Blair doing part-time contract work, but that did not last long. R. 71. She said that she was unable to work at present because employers would not accommodate her need to keep her leg elevated, to alternate between sitting and standing as needed, and to use a knee scooter. R. 75-76.

PazCaballero testified that she is able to drive and that she attends to her three children and husband, who is 90% disabled. R. 77-79. She shops for food with assistance and will use a motorized cart if she is going to be walking for more than 20 minutes. R. 80. She said her walking ability varies from day to day. R. 83-84.

PazCaballero described the triggers for her anxiety and concentration limitations. R. 86-88. She also testified about her physical therapy experience. R. 91-92. She said that she always keeps a cane with her for mobility assistance, but that she tries to go without it at times. R. 93-94.

Vocational expert Aimee Mowery also testified at the supplemental hearing. Mowery described PazCaballero's past work and cited the comparable positions from the Dictionary of Occupational Titles for reference. R. 105-06. The ALJ asked Mowery to consider a hypothetical individual of PazCaballero's age, education, and work experience with a specific set of limitations:

> This person can lift up to ten pounds occasionally, five pounds
> frequently, stand or walk up to two hours in an eight-hour workday. Sit
> for up to eight hours in an eight-hour day with normal breaks. This
> person could never kneel, crawl nor climb ladders, ropes or scaffolds.
> Could occasionally climb ramps or stairs, balance, stoop and crouch.
> This person could frequently but not constantly reach, handle objects
> defined as gross manipulations and finger, defined as fine
> manipulations. This person would be limited to jobs which can be
> performed while using a handheld assistive device at all times when
> walking. The person must avoid all exposure to dangerous moving
> machinery. Most [sic] avoid all exposure to unprotected heights.

R. 106-07. Mowery said such a person could work in all of PazCaballero's previous positions. R. 107. The ALJ then added an additional limitation of requiring a sit/stand option. R. 107. Mowery said such a person could perform some of those jobs. R. 107. Finally, the ALJ added a limitation to simple, routine tasks performed at a pace independent of machinery, equipment, and others in the production process with only occasional public interaction in the work setting. R. 107. Mowery said such a person would not be able to perform PazCaballero's past work, but that appropriate positions existed in substantial number in the national economy. R. 108.

In response to questioning from PazCaballero's counsel, Mowery said that the hypothetical person at issue could not be absent more than 10 to 12 days per year and would have to be on-task at least 85% of the workday. R. 108-09. Mowery also testified that all work would be precluded if the individual could not sustain attention for 2-hour increments, needed to elevate her legs throughout the day, or could not use her hands for fine manipulation for an hour at a time. R. 109-110.

D.  The ALJ's Decision

The ALJ first summarized PazCaballero's work history, noting previous employment in administrative positions as a scheduler, skip tracer, and receptionist.

R. 31. She occasionally worked as a notary and translator at real estate closings, but the ALJ found her income from this work was not substantial. R. 20.

Next, the ALJ found that PazCaballero had the following severe impairments: "history of right ankle fracture, osteoarthritis of the right ankle, fibromyalgia, obesity, complex regional pain syndrome, depression, and anxiety." R. 20. The ALJ then concluded that none of PazCaballero's impairments alone or in combination met or equaled any listed impairments in the regulations. The ALJ noted that several cited listings require an inability to ambulate effectively, and that while PazCaballero alleged difficulties with walking, she was able to do so with and sometimes without the use of a cane. R. 20-21. The ALJ also found that PazCaballero's fibromyalgia, complex regional pain syndrome, and obesity did not meet or medically equal a listing alone or in combination. R. 21-22.

Regarding PazCaballero's mental impairments, the ALJ concluded that she had moderate limitations that did not meet or equal any listing. R. 22-24. Although she claimed to have a history of dyslexia, she was nonetheless able to complete high school and obtain an associate's degree. R. 22. She also had work experience in semi-skilled professions and continued to occasionally act as an interpreter. R. 22-23. The ALJ cited to the mental health consultations and neurological examination where her mental status was evaluated as normal and her cognition as adequate. R. 22. The ALJ also noted that PazCaballero was capable of undertaking activities of daily living, including driving, shopping, and caring for her husband and children. R. 23.

8

The ALJ then described PazCaballero's residual functional capacity ("RFC"), which was consistent with the limitations posed to the vocational expert at the hearing. R. 24-25. The ALJ found that PazCaballero's "medically determinable impairments could reasonably be expected to cause the alleged symptoms," but concluded that her "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." R. 26.

As support for his RFC assessment, the ALJ reviewed the medical evidence and medical opinions. The ALJ considered Dr. Patricio's physical RFC assessment and a letter in which she opined that PazCaballero had not been able to work due to her multiple medical conditions. The ALJ found the letter unpersuasive because it was conclusory and was not a medical opinion as defined by the regulations because it did not use a function-by-function analysis. R. 29. He also observed that Dr. Patricio's opinion did not specify a time that PazCaballero has been unable to work, and contrasted her opinion with the evidence that PazCaballero had engaged in substantial gainful employment during the course of her treatment with Dr. Patricio. R. 29. As to the November 2019 physical RFC assessment, the ALJ found it was inconsistent with the medical record, including Dr. Patricio's own treatment notes that indicated normal physical and mental findings in February and June of that year. R. 30. He also found that the RFC assessment largely lacked objective support in the form of clinical findings. R. 30.

The ALJ next found a letter from Diane Blair regarding PazCaballero's temporary employment in 2017 unpersuasive. In the letter, Blair said PazCaballero stopped working for her due to "repeated health issues," but the ALJ noted that Blair is not a medical professional. R. 29. The ALJ also found Blair's statement that PazCaballero was having "too much difficulty to do the work" to be vague and unsupported by details. R. 29.

The ALJ also considered the mental RFC forms prepared by Burback. The ALJ found Burback's conclusions regarding PazCaballero's ability to function in a competitive work environment to be inconsistent with the record, including Burback's own treatment notes. R. 29. He also noted that Burback's opinions were not supported by references to her own treatment notes but instead relied heavily on PazCaballero's self-reporting. R. 29.

Finally, the ALJ concluded that a pain report prepared in December 2019 by PazCaballero's neurologist was not persuasive because it relied principally on PazCaballero's self-reports and deferred on questions as to whether her pain would affect her ability to function in competitive employment. R. 30.

While the ALJ did not credit the opinions that PazCaballero was disabled in their entirety, he did consider them in formulating his RFC assessment. R. 28-30.

Having surveyed the evidence, the ALJ concluded that PazCaballero was unable to perform any past relevant work because her RFC precluded skilled and semi-skilled work. R. 31. However, citing the vocation expert's testimony, the ALJ found that gainful employment within PazCaballero's RFC was available in

significant numbers in the national economy. R. 31-32. The ALJ therefore found PazCaballero was not disabled. R. 32-33.

## Legal Standard

Judicial review of a final decision of the Social Security Administration is generally deferential. The Social Security Act requires the court to sustain the ALJ's findings if they are supported by substantial evidence. *See* 42 U.S.C. § 405(g). Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). The court should review the entire administrative record, but must "not reweigh the evidence, resolve conflicts, decide questions of credibility, or substitute [its] own judgment for that of the [ALJ]." *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000). "However, this does not mean that [the court] will simply rubber-stamp the [ALJ's] decision without a critical review of the evidence." *Id.* A decision may be reversed if the ALJ's findings "are not supported by substantial evidence or if the ALJ applied an erroneous legal standard." *Id.*

In addition, the court will reverse if the ALJ does not "explain his analysis of the evidence with enough detail and clarity to permit meaningful appellate review." *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005). "Although a written evaluation of each piece of evidence or testimony is not required, neither may the ALJ select and discuss only that evidence that favors his ultimate conclusion." *Herron v. Shalala*, 19 F.3d 329, 333 (7th Cir. 1994); *see Scrogham v. Colvin*, 765 F.3d 685, 698 (7th Cir. 2014) ("This 'sound-bite' approach to record evaluation is an impermissible methodology for evaluating the evidence."). Additionally, the ALJ "has

a duty to fully develop the record before drawing any conclusions," *Murphy v. Astrue*, 496 F.3d 630, 634 (7th Cir. 2007), and deference in review is "lessened . . . where the ALJ's findings rest on an error of fact or logic," *Thomas v. Colvin*, 745 F.3d 802, 806 (7th Cir. 2014). In oft-quoted words, the Seventh Circuit has said that the ALJ "must build an accurate and logical bridge from the evidence to his conclusion." *Clifford*, 227 F.3d at 872.

When the ALJ has satisfied these requirements, the responsibility for deciding whether the claimant is disabled falls on the Social Security Administration, and if "conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled," the ALJ's decision must be affirmed. *Herr v. Sullivan*, 912 F.2d 178, 181 (7th Cir. 1990).

## Analysis

In order to determine whether an individual is entitled to disability insurance benefits, an ALJ must follow the five-step analysis set out at 20 C.F.R. § 404.1520(a)(4). At step one, if the ALJ determines that the claimant is "doing substantial gainful activity," then the claimant is not disabled and no further analysis is necessary. If the claimant is not engaged in gainful activity, at step two, the ALJ must determine whether the claimant has a "severe" impairment or combination of impairments. If the ALJ finds that the claimant has such a severe impairment, and the impairment is one provided for in the Social Security regulation listings, then at step three, the ALJ must find that the claimant is disabled. If the ALJ finds that the impairment is not in the listings, then at step four, the ALJ must assess the RFC the claimant continues to possess despite the claimant's impairment. If the claimant's

RFC enables the claimant to continue his or her "past relevant work," then the ALJ must find that the claimant is not disabled. But if the claimant cannot perform past relevant work, at step five, the ALJ must determine whether the claimant "can make an adjustment to other work." If the claimant cannot make such an adjustment, then the claimant is disabled.

PazCaballero asserts the ALJ committed reversible error on three fronts: (1) the ALJ failed to support his finding that PazCaballero's impairments neither met nor equaled listing level severity; (2) the ALJ improperly rejected the opinions of PazCaballero's treating medical providers; and (3) the ALJ failed to accommodate all PazCaballero's limitations in his RFC assessment.

## I.    Assessment of Listing Level Severity

The Court finds the ALJ reasonably concluded that PazCaballero's impairments did not meet or equal any listing and adequately explained that conclusion in his decision. The claimant has the burden of showing her impairments meet or equal in severity all the criteria specified by a listing. *Ribaudo v. Barnhart*, 458 F.3d 580, 583 (7th Cir. 2006). "An impairment that manifests only some of those criteria, no matter how severely, does not qualify." *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990).

PazCaballero's brief first addresses listings 14.09(A)(1) (inflammatory arthritis) and listing 1.02(A) (major dysfunction of a joint).[3] Listing 14.09(A)(1) required persistent inflammation or persistent deformity of one or more major peripheral weight-bearing joints resulting in the inability to ambulate effectively. R. 20. Listing 1.02(A) required major dysfunction of a major peripheral weight-bearing joint resulting in an inability to ambulate effectively. R. 20.

PazCaballero's argument that the ALJ did not devote any analysis to listing 14.09(A)(1) is belied by the written decision, which logically address both listings together since both required a prolonged "inability to ambulate effectively" defined in equivalent terms as "an extreme limitation of the ability to walk." 20 C.F.R. pt. 404, subpt. P, Appx. 1 § 1.00B(2)(b)(1) (previous version). The ALJ noted that to "to ambulate effectively, individuals must be capable of sustaining a reasonable walking pace over a sufficient distance to be able to carry out activities of daily living." R. 20. He also cited the regulation's non-exclusive list of examples of ineffective ambulation:

> the inability to walk without the use of a walker, two crutches or two canes; the inability to walk a block at a reasonable pace on rough or uneven surfaces; the inability to use standard public transportation; the inability to carry out routine ambulatory activities, such as shopping and banking; and the inability to climb a few steps at a reasonable pace with the use of a single hand rail.

R. 20-21.

---

[3] Effective April 2, 2021, the Social Security Administration revised these listings, modifying the criteria for listing 14.09(A)(1) and replacing listing 1.02 entirely. 85 Fed. Reg. 78164 (Dec. 3, 2020) (codified at 20 C.F.R. pts. 404 and 416). Review in this case proceeds under the rules in effect at the time of the ALJ's decision. *See id.* at 78164 n.2.

The ALJ adequately explained his conclusion that PazCaballero did not meet these listings based on the ineffective ambulation requirement. He noted that her alleged difficulties with walking did not equate to the examples provided by the regulations. In particular, PazCaballero walked with a single cane, which she sometimes did not use, and was able to carry out many activities of daily living. She was able to walk for up to 20 minutes when shopping before using a motorized cart, and walks up and down the stairs at her residence. The ALJ considered PazCaballero's reported falls but noted that her neurological examination was normal and she did not report a balance issue. The ALJ also cited objective medical evidence showing that PazCaballero was walking either normally or with modest limitations at various consultative examinations. Furthermore, the ALJ found no medical opinions on record stating that PazCaballero met the listings in question (the ALJ's consideration of the medical opinion evidence is discussed in greater detail below). While PazCaballero cites to other evidence in the record she claims "confirms" her inability to ambulate ineffectively, much of this evidence is self-reported or reflects temporary limitations, and the ALJ reasonably discounted evidence that did not amount to clinical findings. R. 21.

While PazCaballero points to parts of the record that may be indicative of walking difficulty, "the presence of contradictory evidence and arguments does not mean the ALJ's determination is not supported by substantial evidence." *Gedatus v. Saul*, 994 F.3d 893, 903 (7th Cir. 2021). PazCaballero's arguments are essentially a request that the Court replace the ALJ's view of the evidence with one more favorable

to her—this is not the Court's prerogative. *See id.* at 900 (noting that a reviewing court does not "reweigh the evidence" or "resolve debatable evidentiary conflicts"). Taken together, the Court finds the ALJ's determination that PazCaballero did not meet the ineffective ambulation impairment was supported by substantial evidence, and therefore it was not error to reject listings 14.09(A)(1) and 1.02(A).

For the same reasons, the ALJ's rejection of listings associated with PazCaballero's claimed mental impairments was also reasonable, and PazCaballero does not seem to contest this point. The ALJ explained in detail his conclusions that PazCaballero had at most "moderate" limitations in areas such as concentration and interacting with others, which fell short of listing-level severity.

PazCaballero also argues the ALJ failed to explain his rejection of listings associated with her fibromyalgia, complex regional pain syndrome, and obesity. Admittedly, the ALJ does not discuss these listings in the same detail as others during that portion of the decision. But this does not mean the decision is "so poorly articulated as to prevent meaningful review." *Kastner v. Astrue*, 697 F.3d 642, 646 (7th Cir. 2012). The ALJ discusses PazCaballero's symptoms associated with these conditions in detail later in the decision and incorporated them into his RFC assessment, making it apparent that he did not ignore this evidence. Given that the ALJ concluded PazCaballero was able to engage in substantial gainful activity notwithstanding these conditions, it logically follows that they did meet or equal any listed impairments. *See Sullivan*, 493 U.S. at 530 (noting that listed impairments are intentionally set at a higher level of severity than the statutory standard because

16

they are "designed to operate as a presumption of disability that makes further inquiry unnecessary"). The Court therefore finds no error in the ALJ's rejection of these listings.

## II.    Rejection of Treating Provider Opinions

PazCaballero next argues that the ALJ erred in rejecting certain opinions from her treating care providers. In particular, PazCaballero argues that the ALJ should have given greater (if not controlling) weight to the physical RFC assessment prepared by Dr. Patricio and the mental RFC assessment of Ms. Burback.

The ALJ discussed both of these opinions in significant detail and thoroughly explained why he found them unpersuasive. He addressed both supportability and consistency, the most important factors under the regulations and the only two that *must* be articulated in a final decision. 20 C.F.R. § 404.1520c(b)(2). The ALJ's decision to discount these opinions was largely based on inconsistencies between the opinions and the objective medical evidence, including the clinical observations in those providers' own records. The ALJ also observed that both opinions contained little objective support in the form of citations to treatment notes, and that much of Burback's opinion was based on PazCaballero's own self-reporting. *See* R. 29-30. Discounting the opinion of a treating physician is proper when that opinion is based on a claimant's subjective complaints rather than objective medical evidence. *Ghiselli v. Colvin*, 837 F.3d 771, 776 (7th Cir. 2016).

"If the ALJ discounts the physician's opinion after considering these factors, we must allow that decision to stand so long as the ALJ 'minimally articulated' his

reasons—a very deferential standard that we have, in fact, deemed 'lax.'" *Elder v. Astrue*, 529 F.3d 408, 415 (7th Cir. 2008) (quoting *Berger v. Astrue*, 516 F.3d 539, 545 (7th Cir. 2008)). The ALJ's explanation of why he gave little weight to the medical opinions of PazCaballero's treating providers is sufficient to satisfy this standard. It supplies his reasoning and identifies the specific areas in which those opinions depart from the objective medical evidence. Accordingly, the ALJ did not err in rejecting the opinions of PazCaballero's treating providers.

## III. RFC Assessment

Lastly, PazCaballero argues that the ALJ's RFC assessment failed to properly account for all her limitations. As she points out, it is important for the ALJ to consider all limitations supported by the medical record in combination, because "[e]ven if each problem assessed separately were less serious than the evidence indicates, the combination of them might well be totally disabling." *Martinez v. Astrue*, 630 F.3d 693, 698 (7th Cir. 2011). However, PazCaballero has not demonstrated an error warranting reversal here.

The biggest problem with PazCaballero's argument on this point is that it relies heavily on the opinions discussed above, which the ALJ properly discounted. As the ALJ explained, those opinions were rejected as inconsistent with the objective medical evidence. Regarding the objective evidence itself, PazCaballero cites a variety of symptoms she alleges would logically interfere with full-time work. But the ALJ considered this evidence and discussed it in his written decision. *See* R. 26-28. The ALJ found that even crediting these symptoms, PazCaballero's physical and mental

18

capacities remained at least partially intact, and cited several assessments in the medical record where she demonstrated normal or minimally impaired function. *See* R. 21-24, 27-28. Naturally, PazCaballero cites to other instances where her function was found to be more limited, but again, it is up to the ALJ to weight conflicting evidence, and he was not required to address every piece of evidence in the record. *See Knox v. Astrue*, 327 F. App'x 652, 657-58 (7th Cir. 2009). PazCaballero argues that much of her claim is premised on her pain, but the ALJ plainly considered such symptoms (including in the context of her fibromyalgia and complex regional pain syndrome) among the medical evidence.

The ALJ's RFC assessment also properly accounts for PazCaballero's moderate mental limitations. The governing regulations indicate that individuals with such limitations can function on a sustained basis sufficient to enable gainful activity. *See* 20 C.F.R. pt. 404, subpt. P, Appx. 1 § 12.00(F)(2). The ALJ discussed the ways in which PazCaballero's anxiety and other mental impairments manifest, along with their triggers, and formulated an RFC accordingly. R. 25-26. He noted that PazCaballero's symptoms had improved with treatment and reasonably concluded that they were not of disabling severity, citing in part her ability to keep up with activities of daily living. *Cf. Bruno v. Saul*, 817 F. App'x 238, 242-43 (7th Cir. 2020) (approving ALJ's consideration of claimant's daily activities).

In short, PazCaballero's case for error in the ALJ's RFC assessment is essentially a disagreement with the ALJ's conclusion. Because the ALJ properly

considered the record evidence and supported his conclusion with a reasonable explanation, the Court finds no error at this stage.

## Conclusion

For the reasons stated above, the Court denies PazCaballero's motion for summary judgment, [R. 12], and grants the Commissioner's motion for summary judgment, [R. 17].


ENTERED:

_Thomas M Durkin_

Honorable Thomas M. Durkin
United States District Judge

Dated: May 16, 2022